UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SEAN THOMAS JEFFRIES,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 1:25-cv-01647-JLT-GSA

**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO GRANT DEFENDANT'S CROSS MOTION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**

**(Docs. 13, 14, 15)**

## I. Introduction

Plaintiff Sean Thomas Jeffries seeks judicial review of a final decision of Defendant Commissioner of Social Security denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is before the undersigned for issuance of Findings and Recommendations based on the parties' briefs. After reviewing the record, the undersigned finds that substantial evidence and applicable law support the ALJ's decision and recommends that the Court direct entry of judgment in favor of Defendant and against Plaintiff.

## II. Factual and Procedural Background

Plaintiff filed an application for supplemental security income on August 16, 2019. AR 50. The claim was denied initially and on reconsideration. AR 94–109. The ALJ held a hearing on May 3, 2021. AR 14–32. On May 13, 2021, the ALJ issued an unfavorable decision. AR 66–87. After the Appeals Council denied review, Plaintiff appealed to this Court and the matter was remanded on January 22, 2024. AR 877–892. In pertinent part, the Court directed the ALJ to reconsider the prior administrative medical findings ("PAMFs") which limited Plaintiff to 1-2 step work tasks. AR 888. On April 9, 2025, the ALJ again issued an unfavorable decision. AR

802–837. After the Appeals Council denied review, Plaintiff appealed again to this Court.

**III. Standard of Review**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

**IV. Evaluating a Claimant's Alleged Disability**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

Finally, errors in Social Security disability determinations are subject to harmless error analysis. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity[.]" Treichler, 775 F.3d at 1099 (citation omitted).

## V. The ALJ's Decision

At step one, the ALJ found that the claimant had not engaged in substantial gainful activity since August 16, 2019, the application date. AR 809.

At step two, the ALJ found that the claimant had the following severe medically determinable impairments: psoriatic arthritis, psoriasis, major depression, anxiety disorder, panic disorder with agoraphobia, social phobia, disorder of sleep wake cycle, and autism spectrum disorder. AR 809.

At step three, the ALJ found that the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). AR 811.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform medium work as defined in 20 CFR 416.967(c), with the following limitations:

> He can frequently climb ramps and stairs; he can occasionally climb ladders, ropes, and scaffolds; he can frequently balance, stoop, kneel, crouch, and crawl; he should avoid exposure to work environments with extreme heat or extreme cold for more than 5% of a workday to address incidental exposure such as walking between buildings or across a parking lot; he can have occasional exposure to workplace hazards, such as moving machinery and unprotected heights; he can frequently handle and finger with the bilateral upper extremities; he can understand, remember, and carry out simple instructions; and he can have occasional interaction with supervisors, coworkers, and the public.
>
> AR 814.

At step four, the ALJ found that the claimant had no past relevant work. AR 829.

At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: Order Selector, Kitchen Helper, and Housekeeper. AR 830

Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since the application date of August 16, 2019. AR 831.

## VI. <u>Issue Presented</u>

Plaintiff asserts two claims of error.

First, Plaintiff contends that "The ALJ erred as a matter of law by failing to properly determine Plaintiff's mental and physical residual functional capacity." MSJ at 4, ECF No. 13. This claim is further broken down into two parts: 1- PAMFs (specifically "the 1-2 step work task limitation in the PAMFs."); and 2- "Plaintiff's hand complaints." MSJ at 5–10.

Second, Plaintiff contends that "The ALJ erred as a matter of law by failing to fully

develop the record of Plaintiff's mental impairments." MSJ at 10.

### A. <u>Claim 1</u>

#### 1. <u>RFC Generally</u> (1 to 2 step task limitation)

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity (RFC). *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

##### a. <u>Analysis</u> (1 to 2 step task limitation)

To begin, in its Remand Order the Appeals Council stated:

> The hearing decision does not contain an adequate evaluation of the medical source opinions and prior administrative medical findings. When the residual functional capacity assessment conflicts with an opinion from a medical source, the Administrative Law Judge must explain why the opinion was not

> adopted (Social Security Ruling 96 8p). State agency psychological consultants J. Collado, M.D., and Howard S. Leizer, Ph.D., concluded that the claimant is capable of understanding, remembering, and carrying out simple and routine 1-2 step work tasks (Exhibits B2A, page 10; and B4A, page 11). The Administrative Law Judge concluded that the prior administrative medical findings rendered by Drs. Collado and Leizer were "generally persuasive" (Decision, page 12). However, the Administrative Law Judge neither adopted Drs. Collado's and Leizer's conclusions that the claimant is restricted to 1-2 step work tasks nor explained why that limitation was not adopted. Further evaluation of the medical source opinions and prior administrative medical findings is therefore warranted.

AR 888.

On Remand the ALJ found the PAMFs of the state agency psychological consultants J. Collado, M.D., and Howard S. Leizer, Ph.D. to be persuasive, however the ALJ did NOT include a restriction limiting Plaintiff to 1-2 step tasks. The ALJ explained the reasoning for rejecting that limitation as follows:

> However, the undersigned notes that their opinions are persuasive as to the simple nature of tasks, but not to the one to two step nature of tasks. He acknowledged during the hearing that he can make a box of Kraft macaroni and cheese by following the instructions on the back of the box and he could probably bake a cake following the instructions on the back of a box. He can also drive and play videogames and stream on Twitch. This shows a level of functioning in excess of one to two step tasks.

Id.

The parties do not dispute that this was the ALJ's only articulated reason for rejecting the 1-2 step task limitation. Plaintiff argues that "This finding ignores the complications of a work environment. Likening the ability to perform a task with no time pressure, no supervisors, and no consequences for errors is not an appropriate analogy." MSJ at 6. Yet Plaintiff's argument here would almost certainly apply to many other common daily activities that are relied upon by ALJs when establishing a RFC. For example, activities like cooking, cleaning, shopping, driving, childcare and housekeeping, to name a few. Moreover, if daily activities had to meet the criteria set forth by Plaintiff, ALJs would essentially be precluded from considering them in evaluating functionality as arguably few daily activities would actually approximate the pressures of a

competitive work environment, such as time and performance standards.

In addition, Plaintiff's MSJ highlights Plaintiff testimony that,"he could follow the instructions to make Kraft Mac & Cheese. (Ar. 860)" and that he "probably" could follow the instructions on the back of a box of instant cake mix to bake a cake. (Ar. 860).

MSJ at 4

Plaintiff argues that "imagining that you can perform an activity such as making macaroni and cheese or baking a cake is not the same as actually performing that activity." Reply at 3. Plaintiff continues, "To wit, a claimant could testify that he thinks he could change the oil in a car, but unless the record shows that he *actually changed the oil in a car during the period at issue*, it is not substantial evidence." Id. (emphasis added). Plaintiff however identifies no support for his argument that an ALJ cannot consider a claimant's subjective estimation of his own abilities when determining his RFC.

It is important to note that the third job identified by the VE, housekeeper (DOT # 323.687-014), has a DOT reasoning level of R1. Reasoning Level 1 restricts a claimant to jobs requiring no more than two-step instructions. *See Rounds*, 807 F.3d at 1044 (an RFC limiting a plaintiff to "one-to-two step tasks" is aligned with Reasoning Level 1). See also, Cervantes v. O'Malley, No. 1:22-cv-1565 JLT GSA, 2024 U.S. Dist. LEXIS 48378, at *10 (E.D. Cal. Mar. 19, 2024). Thus, Reasoning level 1 would not preclude Plaintiff from performing the job of housekeeper, and thus even had the ALJ erred in omitting the 1-2 step task limitation, it would constitute harmless error.

Notwithstanding, the ALJ adequately explained the rejection of the 1-2 step task limitation by relying on Plaintiff's daily activities to reject the 1-2 step task limitation, and this includes Plaintiff's argument that his daily activities may not approximate the pressures of a competitive work environment, and his argument that some of the activities Plaintiff mentioned were ones he only believed he could perform.

In sum, the ALJ's rejection of the 1-2 step task limitation was supported by substantial

evidence.

**2. Law Applicable to Subjective Symptom Testimony (hand limitations[1])**

An ALJ performs a two-step analysis to determine whether a Plaintiff's testimony regarding subjective pain or symptoms is credible. See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82. If the claimant satisfies the first step and the ALJ finds that there is no evidence of malingering in the record, the ALJ must then evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit the individual's ability to perform work-related activities. S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); see also S.S.R. 16-3p at *10. Subjective testimony cannot be rejected on the sole ground that the testimony is not entirely corroborated by the objective medical evidence in the record. Nevertheless, the medical evidence is still a relevant factor in determining the severity of Claimant's pain and its disabling effects. See, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition, other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- any applicable precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any prescribed medication; 5- treatment other than medications that the claimant receives; 6- any other

[1] Although Plaintiff does not appeal on the basis of the clear and convincing reasoning standard directly, because this claim primarily addresses the ALJ's rejection of Plaintiff's alleged hand limitations, it implies the clear and convincing reasoning standard.

measures the claimant uses to relieve pain or other symptom; and 7- other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

**a. Analysis (hand limitations)**

Plaintiff summarizes his pertinent subjective testimony as follows:

> Plaintiff applied for SSI, in part, due to psoriatic arthritis. (Ar. 211). At the first hearing, Plaintiff testified that he had a challenging time using his hands for writing or typing. (Ar. 22-24). At the second hearing, Plaintiff testified that his hands started to hurt him after twenty minutes of using the Xbox controller, but he could not play at all during a flare up. (Ar. 859, 864). He testified that the arthritis in his fingers made it hard to brush his hair, brush his teeth, close buttons, and hold dishes. (Ar. 855). He further testified that these flare ups lasted a week and occurred twice a month. (Ar. 862-863). Plaintiff's complaints were supported objectively by examination findings and increased sedimentation rate testing. (See, e.g., Ar. 1108-1346).

MSJ at 7.

Plaintiff acknowledges that the ALJ formulated an RFC more restrictive than that of the PAMFs limiting Plaintiff to frequent handling and fingering bilaterally "to address his intermittent swollen fingers from psoriatic arthritis." AR 828.

However, Plaintiff takes issue with the sufficiency of the ALJ's reasoning in support of the limitation to frequent handling and fingering, which the ALJ supported as follows:

> The claimant alleged during the May 2021 and March 2025 hearing that he has significant difficulties using his hands to lift, carry, type, and write. He also alleged during the March 2025 hearing that his fingers swell like "sausage fingers" approximately two times per month during flare-up episodes, which last approximately one time per week per episode (so alleging debilitating swelling 50% of the month). He further alleged that he that he [sic] spends his time in bed doing nothing during a flare-up. Yet, the evidence shows that the claimant is able to use his hands to perform activities of daily living with little to no upper extremity difficulty, which include managing personal care, assisting with feeding and taking care of the cats, preparing simple meals like packaged or microwaveable foods, performing household chores, driving, and shopping. Exs. B1F/179, 251; B4E/2-4; B4F/29; B5E/2 4 [sic]; B8E/2-4; B9E/2-4; B14F/5; B15F/3, 37. The evidence shows that he uses the computer regularly, if not daily, to play games and socialize with others online. Exs. B1F/74, 264; B4E/5; B5E/2, 5; B8E/2, 5; B9E/5; B15F/25, 30. The evidence also shows that he plays

> videogames [sic] regularly. Exs. B1F/74; B15F/25, 30. He acknowledged during the March 2025 hearing that he plays Pokémon Go in the parking lot adjacent to his house approximately eight times per month. There is no evidence in the record to indicate that he uses hands-free computer software.

AR 824.

Plaintiff contends that this discussion fails to explain how the activities cited above support Plaintiff's ability to frequently handle and finger bilaterally on a regular and continuing basis. However, daily activities need not be equivalent to work related abilities or transferable to a work setting for the ALJ to consider them in evaluating functionality. See Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities . . . evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated."); Orn, 495 F.3d at 639. (noting that an ALJ may rely on activities of daily living as a basis for rejecting a claimant's subjective complaints when either 1) the activities performed contradict the claimant's testimony; or 2) rely on the performance of activities of daily living if the activities are performed to the extent that they meet the threshold for transferable capabilities).

Here, the ALJ's interpretation of Plaintiff's daily activities seem rational and supportive of the RFC, and as the Court in Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir.2005) explained, "Although the evidence of Burch's daily activities may also admit of an interpretation more favorable to Burch, the ALJ's interpretation was rational, and "we must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." (citing Magallanes, 881 F.2d at 750).

Plaintiff also takes issue with the ALJ's above reasoning as follows:

> Additionally, this discussion omits relevant medical evidence, misrepresents

> Plaintiff's statements, and does not adequately consider Plaintiff's limitations during a flare up.
>
> First, this explanation does not directly cite to objective testing that supports Plaintiff's allegations. Sedimentation rate testing in September of 2020 was 16 mm/hr., (Ar. 1151), and in March of 2023 it was 40 mm/hr. (Ar. 1117).6 Additionally, in February of 2025 it was 39 mm/hr. (Ar. 1344). Thus, Plaintiff's allegations are supported by objective tests that were not included in this discussion.
>
> MSJ at 8–9.

To begin, Plaintiff does not explain how his sedimentation rate is supportive of his testimony. Secondly, the ALJ focused not on Plaintiff's sedimentation rate, but rather comparing his mother's third-party reports to the objective medical findings in the record, as follows:

> In an October 2019 third party function report, the claimant's mother Gaytha Melone stated that he has difficulties lifting, using his hands, sitting, standing, walking, squatting, bending, kneeling, and climbing stairs due to pain. Ex. B4E/1, 6. Ms. Melone stated that he has is unable to grip objects with his hands for any length of time. Ex. B4E/1. She also stated that he has difficulties with understanding and following instructions due to a learning disability. Ex.B4E/1, 6. She further stated that he has difficulties handling stress, handling changes in routine,and getting along with others due to anxiety. Ex. B4E/1, 6, 7. She also stated that he has an irregular sleep pattern due to pain and anxiety. Ex. B4E/2. She reported that he resides with family. Ex. B4E/1. She reported that he is able to manage personal care, help feed the cats, prepare simple meals like packaged foods, perform some household chores like cleaning and laundry, drive, and shop. Ex. B4E/2-4. She also reported that he has difficulty managing his money. Ex. B4E/4. She further reported that he enjoys playing computer games (if his pain allows), playing Pokémon Go, and watching Anime. Ex. B4E/5. She also reported that he does not participate in any social activities, but noted that a few times per year he will go somewhere with a friend. Ex. B4E/5. She noted that he enjoys walking on the beach or in forests. Ex. B4E/5. In a February 2020 third party function report, Ms. Melone affirmed her previous statements. See generally Ex. B8E/1-8. The undersigned considered Ms. Melon's statements in evaluating the claimant's claim for disability. However, her statements do not convince the undersigned that the residual functional capacity is less limiting than warranted by the evidence discussed in this decision. The undersigned notes that her descriptions of his limited hand use is not consistent with the objective medical findings in the record. Notably, his psoriatic condition responded very well to

> Otezla therapy. Exs. B14F/9, 15, 17, 33; B15F/5, 45, 77; B17F/2, 6. He regularly demonstrated full range of motion throughout, including in the hands and wrists. Exs. B1F/180; B3F/17; B15F/80. He also regularly demonstrated intact strength, sensation, and reflexes throughout. Exs. B1F/125, 217; B4F/31; B15F/61; B17F/8. There was evidence of only mild tenderness and swelling of the right hand without synovitis or joint effusion. Exs. B1F/168, 180; B3F/12, 23; B4F/31; B11F/35.

AR 826-827.

Earlier in the ALJ's decision, the ALJ acknowledged instances of pain and/or swelling on exam as a part of a balanced factual overview. See AR 815–826 (referencing hand pain and/or swelling upon examination on 11/20/18, 6/6/19, 7/12/19, 9/13/19, 2/10/20, 7/8/20, 8/9/21, 12/6/22, 2/21/23, 3/14/23, 5/30/23, and 1/28/25).

Again, if the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997).

In sum, although it might be argued that the ALJ's overall discussion did not precisely capture the exact limitations surrounding Plaintiff's hand use, such as flare up frequency and duration and the manipulative activities he was capable of during flare ups, ultimately the ALJ provided a balanced discussion acknowledging normal and abnormal objective findings alike, covered Plaintiff's subjective statements and reached a supported conclusion that Plaintiff had significant and meaningful use of his hands during the relevant period and was thus capable of frequent handling and fingering.

Therefore, the ALJ did not commit harmful error regarding Plaintiff's alleged hand limitations

**B. <u>Claim 2</u>**

**1. <u>An ALJ's Duty to Develop the Record, Generally</u>**

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Smolen v. Chater, 80 F.3d at 1288 (quoting Brown v.Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("In making a determination of disability, the ALJ must develop the record and interpret the medical evidence.") (citation omitted); However, the ALJ's duty to conduct an appropriate inquiry is triggered only when there is "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence." Tonapetyan, 242 F.3d at 1150 (citations omitted). When triggered, the ALJ "may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Id. (citations omitted

A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011); Garcia v. Comm'r of Soc. *Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal. Apr. 17, 2020).

The ALJ is not permitted to fill the evidentiary gaps of the record by rendering a medical judgment and interjecting his own medical opinion to develop the RFC. See Tackett v. Apfel, 180 F.3d at 1102. "As a layperson, an ALJ is not qualified to extrapolate functional limitations from 'raw medical data' but may make reasonable inferences from medical evidence susceptible to a lay understanding." see Katie E. B. v. Kijakazi, No. 20CV2354-MDD, 2022 WL 4595062, at *8 (S.D. Cal. Sept. 30, 2022).

Finally, this independent duty to fully and fairly develop the record and to assure that a claimant's interests are considered extends to the represented as well as to the unrepresented claimant. Tonapetyan v Halter, 242 F.3d at 1150 (9th Cir. 2001).

**a. Analysis (duty to develop the record)**

Plaintiff contends the ALJ erred in failing to "obtain a psychological consultative examination to resolve the ambiguity and insufficiency related to Plaintiff's mental impairments." MSJ at 10.

Plaintiff's explanation of this claim follows:

> Plaintiff applied for SSI in August of 2019. (Ar. 50). The PAMFs were rendered in December of 2019 and May of 2020. (Ar. 38-49; 51-64). In the April 9, 2025 decision, the ALJ determined that Plaintiff had the following severe mental impairments: major depression; an anxiety disorder; a panic disorder with agoraphobia; social phobia; a disorder of sleep wake cycle; and an autism spectrum disorder. (Ar. 809). The ALJ then generally relied on the PAMFs for the B criteria findings and the mental RFC (except for the 1-2 step work tasks, see above). Thus, the ALJ relied on medical opinions that were 5-6 years old to find Plaintiff not disabled for the entire period at issue.
>
> During the period at issue, Plaintiff continued to get mental health treatment, and this evidence became part of the record. (See, e.g., Ar. 1183-1205). This evidence was not reviewed by the State agency medical consultants in formulating the PAMFs. Additionally, although the ALJ reviewed this evidence in the hearing decision, these treatment notes do not contain a medical opinion from an examining or treating provider. Plaintiff also has a lifelong learning disorder with difficulties in concentration and task completion. (Ar. 231-236). Based on the totality of the evidence related to Plaintiff's mental impairments, there is a clear insufficiency in this case. There is a five year period with no medical opinions offering limitations related to these severe mental impairments.

MSJ at 11-12

As is common, Plaintiff continued receiving care during the period of time between the PAMFs and the administrative hearing. However, "there is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time." See Owen v. Saul, 808 F. App'x 421, 423 (9th Cir. 2020). It is the content of the records, or lack thereof, and not the passage of time that creates ambiguity or inadequacy.

In addition, the lack of a medical opinion in and of itself does not create an ambiguity or inadequacy because the RFC is not a medical opinion and need not mirror one. See 20 C.F.R. §

416.927(d)(2) ("the final responsibility for deciding [RFC] is reserved to the Commissioner"); "ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination." Bufkin v. Saul, 836 F. App'x 578, 579 (9th Cir. 2021). There is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). Finally, "The decision to purchase a consultative examination will be made on an individual case basis," not that it will be purchased in every case. 20 C.F.R. 404.1519.

Here, Defendant explains why the evidence in this case was neither ambiguous nor inadequate:

> In this case, the evidence is not ambiguous or inadequate and the ALJ was not required to obtain additional medical opinion evidence. The ALJ assessed Plaintiff's testimony, approximately 750 pages of medical records and the prior administrative medical findings of the reviewing state agency doctors regarding his condition. While the evidence showed Plaintiff had impairments that would reasonably lead to some limitations, the record was more than adequate to allow the ALJ to properly evaluate Plaintiff's claims and make a determination regarding Plaintiff's impairments and limitations. See Findley v. Saul, 2019) WL 4072364, at *6 (E.D. Cal. Aug. 29, 2019) (the ALJ was not obligated to further develop the record where the ALJ had complete treatment records, which supported the ALJ's findings and did not present an ambiguity or inadequacy); see also LeBeouf v. Saul, 2020 WL 5702240, at *10-11 (E.D. Cal. Sept. 24, 2020) (same).

ECF 14 at 6

Defendant continues:

> Thus, the question is not whether an additional physician reviewed the subsequent evidence, but whether the subsequent evidence regarding Plaintiff's impairments and limitations were still consistent with a medical consultants' assessments and findings. See 20 C.F.R. § 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative

> medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). The ALJ clearly considered the later evidence not reviewed by the state agency physicians and the ALJ addressed how later evidence regarding Plaintiff's impairments and limitations impacted her consideration of the medical consultants' assessments and the RFC determination.

ECF 14 at 8-9

As well, the fact that Plaintiff "has a lifelong learning disorder with difficulties in concentration and task completion," also does not create ambiguity or inadequacy.

Plaintiff further contends:

> The ALJ also challenged the limitation to 1-2 step work tasks purely through supposition without a medical basis. (Ar. 828). This analysis created an ambiguity regarding the Plaintiff's work-related mental limitations.

MSJ at 12.

To begin, the ALJ was specifically instructed on Remand to consider the 1-2 step task limitation. The Appeals Council stated, "The hearing decision does not contain an adequate evaluation of the medical source opinions and prior administrative medical findings . . . that the claimant is capable of understanding, remembering, and carrying out simple and routine 1-2 step work tasks." AR 888. Secondly, as noted above, the ALJ did not rely "purely" on supposition, and the Remand order did not instruct the ALJ to obtain a psychological consultative opinion concerning the 1-2 step limitation.

Plaintiff finally contends:

> Therefore, the ALJ had a duty to further develop the record regarding Plaintiff's severe mental impairments. The evidence in the exhibit file is both insufficient and ambiguous. As such, the ALJ had a duty to obtain a psychological consultative examination with a detailed medical opinion regarding Plaintiff's current work-related limitations. Despite having years to obtain this examination, the ALJ did not perform this duty, impacting the RFC and the step five determination. Therefore, remand is appropriate to further develop the medical record, to reconsider the Plaintiff's mental impairments, to reconsider the RFC, and to reconsider the step five determination.

MSJ at 12

While Plaintiff emphasizes that the ALJ had years to obtain an examination, yet as Defendant points out Plaintiff also had the opportunity to make the request and did not do so. Defendant explains:

> Furthermore, Plaintiff's hearing attorney confirmed they had an opportunity to review the record, acknowledged it was complete and had no objections to the exhibits in the file that the ALJ would be basing her decision on (AR 849). See Johnson v. Saul, 2021 WL 754197, at *3 (E.D. Cal. Feb. 26, 2021) (finding the ALJ was not obligated to further develop the record where counsel stated at the hearing that the record was complete). In addition, Plaintiff's attorney at no time prior to the ALJ's decision indicated that the ALJ failed to properly develop the record or that an additional consultative examination was required (AR 1087-1093).

ECF No. 14 at 6–7

Defendant makes a valid point and  in support cites Meanel v. Apfel, wherein the Ninth Circuit stated, "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal in federal court." 172 F.3d 1111, 1115 (9th Cir. 1999), as amended (June 22, 1999).

In a follow-up decision, the  Court in the  Redmond, citing Meanel, stated,  "Courts in this circuit have applied Meanel in a variety of factual contexts, including the waiver of an argument that the mental health record should have been developed further by the ALJ." Redmond v. Berryhill, No. 17-cv-01603-DMR, 2018 U.S. Dist. LEXIS 110473, at 38-39 (N.D. Cal. July 2, 2018) (citing Johnson v. Colvin, No. ED CV 15-02239 AFM, 2016 U.S. Dist. LEXIS 105194, 2016 WL 4208434, at *3 (C.D. Cal. Aug. 8, 2016) (relying on Meanel, and holding that "neither Plaintiff nor his counsel suggested that the ALJ . . . should send Plaintiff to a mental evaluation, or should further develop the record in any other way. As such, Plaintiff waived any arguments on [this issue].").

Further, under Ninth Circuit law, the Court can excuse this failure to preserve issues only "when necessary to avoid manifest injustice." Meanel, 173 F.3d at 1115; Phillips, 593 Fed. Appx. at 684; Simpson, 2016 U.S. Dist. LEXIS 71648, 2016 WL 3091487 at *2.

However, the Undersigned need not decide the waiver issue as it has not been shown that the ALJ committed error by not ordering a psychological consultative examination.

**VII. Findings and Recommendation**

For the reasons stated above, substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, the recommendation is that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, be **DENIED**
2. Defendant's Cross Motion, ECF No. 14, be **GRANTED**
3. That the Commissioner's decision be **AFFIRMED**
4. That the Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

**VII. Objections Due Within 14 Days**

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 3, 2026** **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE